**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| IN RE: | : | |
| 422 CORPORATION | : | Case No. 05-3276 (BKT) |
| Debtor | : | |
| | : | |
| 422 CORPORATION and | : | Chapter 11 |
| BANCO POPULAR DE PUERTO RICO | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | Adv. No. 05-00251 (BKT) |
| | : | |
| UNITED SURETY & INDEMNITY CO., | : | |
| PUERTO RICO PUBLIC HOUSING | : | |
| AUTHORITY, and JULIE LORENZO | : | |
| Defendants | : | |
| | : | |

**OPINION AND ORDER**

This case came before the court by way of a trial where 422 Corporation

("Debtor") and Banco Popular de Puerto Rico ("BPPR") were seeking damages in the

amount of $3,681,000.00 against United Surety & Indemnity Company ("USIC") and the

Puerto Rico Public Housing Administration ("PRPHA") under several causes of action

stemming from a construction contract. In the modified pre-trial report filed on May 5,

2007 (Dkt. No. 132), and in open court during the trial, plaintiffs withdrew their equitable

subordination claim against defendant USIC.  The sixth cause of action in the Complaint

sought a release of Ms. Julie Lorenzo ("Lorenzo), a principal of Debtor, from her

obligations to USIC under the General Agreement of Indemnity ("GAI"). This cause of

action was dismissed without prejudice by an order of this Court dated March 24, 2006 (Dkt. No. 39). In that opinion, this Court found that it did not have subject matter jurisdiction over any claims between Lorenzo in her personal capacity and USIC arising from the GAI.

The evidence and testimony provided during the trial seeks to have this Court determine the rights of the respective parties as they relate to the contract and the contractual funds, and how those rights have been affected and/or modified by the facts and behavior of each party.

This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§1334 and 157(a) and the General Order of referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. §157(b). Although the parties initially demanded a trial by jury, they unanimously and expressly withdrew said request at the final pretrial conference and in the modified pre-trial report. At the conclusion of the plaintiffs' case-in-chief, defendants USIC and PRPHA orally presented a non-suit motion under Federal Rules of Bankruptcy Procedure 7052(c) against plaintiffs. This opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052. Before turning to the findings of fact and this Court's discussion of the complaint's causes of action, we will address two issues which arose in open court.

**PRPHA's Motion to Dismiss for Failure to Arbitrate:**

Debtor and PRPHA entered into a construction contract on or about December 1, 2002 (the "Construction Contract"), for the remodeling and modernization of a public

housing project known as Las Americas Public Housing ("The Project"), in Lajas, Puerto Rico. At trial, PRPHA argued for dismissal of Debtor's claims because the Construction Contract provided for arbitration in the event of a dispute arising from the agreement.

While federal policy favors the arbitration of disputes, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 61 (1st Cir. 2003) ("[a] waiver is not to be lightly inferred"), arbitration provisions must be "invoked in a timely manner or the option is lost." Rankin v. Allstate Ins. Co., 336 F.3d 8, 12 (1st Cir. 2003). A delay in bringing arbitration is inferred as "inconsistent with the future desire to arbitrate," Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 11 (1st Cir. 2005), and any such delay may prejudice the other party. Furthermore, considerations of judicial economy favor the forfeiture of the right to arbitrate in circumstances of litigation-related delay. Rankin, 336 F.3d at 13 ("If arbitration is invoked in response to a lawsuit, it must be done early on in the case so resources are not needlessly deployed").

Recent Supreme Court jurisprudence has suggested that "gateway questions" and issues of procedure shall be left to the arbitrator, Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85 (2002) ("procedural arbitrability, i.e. whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide") (quoting the Revised Uniform Arbitration Act of 2000 ("RUAA") at § 6(c) & cmt. 2, 7 U.L.A. 12-13 (Supp. 2002)); See also Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444 (2003) (plurality opinion) (reaffirming the presumptions outlined in Howsam). That notwithstanding, the First

Circuit has clarified that these decisions in no way question the validity of the long-held practice of judicially found waiver. Marie, 402 F.3d 1 at 14 ("We hold that the Supreme Court in Howsam and Green Tree did not intend to disturb the traditional rule that waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court").

Accordingly, the First Circuit has relied on a "nonexclusive list of circumstances" in determining whether an implied waiver of arbitral rights has occurred:

> "[1] whether the party has **actually participated in the lawsuit** or has taken other action inconsistent with his right, . . . [2] whether the **litigation machinery has been substantially invoked** and the parties were **well into preparation of a lawsuit** by the time an intention to arbitrate was communicated by the defendant to the plaintiff, . . . [3] whether there has been **a long delay** in seeking the stay or whether enforcement of arbitration was brought up when trial was near at hand. . . . Other relevant factors are [4] whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, . . . [5] whether important intervening steps (e.g. taking advantage of judicial discovery procedures not available in arbitration . . .) had taken place, . . . and [6] whether the other party was affected, misled, or prejudiced by the delay."

Tyco Int'l (U.S.) Ltd. v. Swartz (In re Tyco Int'l Ltd. Sec. Litig.), 422 F.3d 41, 44 (1st Cir. 2005) (citing Lomas v. Travelers Prop. Cas. Corp. (In re Citigroup, Inc. Capital Accumulation Plan Litig.), 376 F.3d 23, 26 (1st Cir. 2004)) (emphasis added).

Based on the totality of the circumstances, there is no doubt that PRPHA has waived its right to arbitration in this case. Instead of raising the issue prior to or at the commencement of this litigation, PRPHA brings forth this oral motion during the trial and in its closing statement, with no written brief of the matter whatsoever. This most certainly constitutes undue delay on behalf of PRPHA.

As a supplement to the sixth circumstance listed above, the First Circuit has often required the showing of a "modicum of prejudice." Rankin, 336 F.3d at 12; Citigroup,

376 F.3d at 26. In making a finding of prejudice, "we consider the larger context of the litigation." Citigroup, 376 F.3d at 26. In this case, imposing the arbitration clause after many months of time wasted in trial preparation would amount to inherent prejudice against the Debtor. The First Circuit has made this conclusion before, even under circumstances more favorable to the party making the request. Rankin, 336 F.3d at 14 ("there is prejudice inherent in wasted trial preparation when an arbitration demand is made, and effectively granted, after many months of delay and only six weeks before a long-scheduled trial") (emphasis added).

PRPHA's untimely motion to compel arbitration constitutes undue delay and would furthermore amount to prejudice against the Debtor if granted. In consideration of the foregoing, this Court holds that PRPHA's arbitral rights in this case have been waived and forfeited.

**USIC and PRPHA's Motions for Judgment on Partial Findings pursuant to Fed. R. Bankr. P. 7052:**

This Court is not obliged to make a final determination under Fed. R. Civ. P. 52(c), made applicable to bankruptcy adversary proceedings pursuant to Fed. R. Bankr. P. 7052. Rule 52(c) states that upon receipt of a motion for judgment on partial findings, the court "may enter judgment as a matter of law" immediately, or the court "may decline to render any judgment until the close of all evidence." Fed. R. Civ. P. 52(c). Here, this Court chose not to enter judgment on USIC and PRPHA's Rule 52(c) oral motions made at the close of Plaintiffs' evidence. In lieu of a ruling on the motion, this Court's opinion will serve as a final judgment on the entirety of the evidence. Young v. Hamilton, 92 Fed. Appx. 389, 394 (9th Cir. 2003) ("the court chose not to enter judgment…but instead

to hear further evidence before deciding...This was well within its discretion under the rule").

**FINDINGS OF FACT:**

The original contract price was four million seven hundred sixty two thousand eight hundred dollars ($4,762,800.00). The original contractual time was 810 calendar days which were to conclude on February 18, 2005.  The Construction Contract required from Debtor to submit a performance and payment bond to guarantee its performance under the Construction Contract and the payment of the labor and materials incorporated in the Project. On or about September 13, 2002, USIC issued a payment and performance bond (the "Bond") in relation to work contemplated by the Construction Contract. On October 4, 2000, in connection with the issuance of the Bond, Lorenzo, a named codefendant but an involuntary plaintiff in this adversary proceeding, on behalf of Debtor and in her personal capacity, executed the GAI in favor of USIC. On or about April 30, 2003, BPPR extended financing to Debtor and Debtor entered into a loan agreement with BPPR.  On that same date, Debtor and BPPR also entered into a security agreement whereby the former assigned the contract funds of the Project to the latter, as a guarantee of the repayment of the loan (the "Assignment").  According to witness testimony and documentary evidence, the Debtor did not obtain PRPHA's prior, express and written consent to assign the Project funds to BPPR. On February 22, 2005, Debtor and PRPHA amended the Construction Contract.  Among other changes, this amendment extended the construction period from 810 days to 1003 days and incorporated change orders number 1 through 8.  To date, the Construction Contract contains eleven (11) change orders with a twelfth pending final approval.  Change order number 11 was finalized on May 5, 2006,

- 6 -

and extends the Contract Termination date to April 4, 2007, for an adjusted Project cost of $5,725,301.87. Debtor filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code on April 14, 2005. On November 9, 2005, the captioned adversary proceeding was filed. The Complaint raises several claims against USIC, including (i) the status of USIC as a secured creditor with respect to the Construction Contract proceeds; (ii) interference with the rights and property of the Plaintiffs in the Construction Contract; and (iii) breach of its contract with the Debtor. The Complaint also alleges a breach of contract claim against PRPHA.

**First Cause of Action:**

The first cause of action in the Complaint (the "First Count") seeks a declaratory judgment that USIC does not have a perfected security interest in the proceeds of the Construction Contract and that the rights of the Debtor and BPPR to such proceeds are superior to those of USIC. In order to ascertain the respective interests of the parties to the contractual proceeds we will begin with an analysis of the assignment between Debtor and BPPR of the Project funds.

While rights in Puerto Rico are generally assignable, any transfer is subject to law and valid only when "there [is] no stipulation to the contrary." 31 L.P.R.A. § 3029 (2004); *see* Banco Bilbao Vizcaya v. Municipio de Vega Baja, 2001 T.S.P.R. 60, 67 (2001). On this point, USIC has correctly asserted that the Assignment of moneys due under a contract from Debtor to BPPR was invalid under the original Construction Contract and per Article 201 of the Puerto Rico Political Code, 3 L.P.R.A § 902 (2004) [hereinafter "Article 201"].

- 7 -

As stated by paragraph XV of the Construction Contract between Debtor and PRPHA,

> "The rights of each party hereunder are personal to that party and may not be assigned or otherwise transferred to any other person, firm, corporation, or other entity **without the prior, express, and written consent of the other party**" (emphasis added).

It follows that for the Assignment from Debtor to BPPR to be valid under the Construction Contract, PRPHA must have given prior, express and written consent. The valid consent alleged by BPPR was in the form of a signature from the Secretary of Housing of Puerto Rico, dated January 25, 2005, twenty-one (21) months after the execution of the Assignment documents between Debtor and BPPR. (*See*, Modified Pre-Trail Report Dkt. No. 132). Such consent can hardly be considered "express," and most certainly not "prior." By failing to acquire prior consent from PRPHA, Debtor's Assignment to BPPR is rendered invalid under the Construction Contract and thus not enforceable against PRPHA. Indeed, it is well settled law in Puerto Rico that a clause in a contract which prohibits assignment must prevail over a subsequent assignment contrary to the former clause. Banco Bilbao, 2001 T.S.P.R. at 66-68.

Even when examining the assignment beyond the boundaries of the original Construction Contract, USIC has successfully demonstrated that the Legislature of Puerto Rico explicitly prohibits such a transfer of rights. Article 201 of the Puerto Rico Political Code sets forth a general rule prohibiting assignments and transfers of claims against the government of Puerto Rico. 3 L.P.R.A. § 902 para. 1; § 914-2 (clarifying that Article 201 applies to "every agency, dependency, body, office, department, instrumentality, municipality, or any other political subdivision of the Government of Puerto Rico..."). While Article 201 outlines certain exceptions to this general rule of nonassignability of claims against the government, BPPR failed to show how their Assignment has satisfied

the conditions required under law for such assignment.  On the contrary, the undisputed facts in this case support the conclusion that the Assignment is null and void. As stated by Article 201:

> "All transfers and assignments made of any claim upon or against the Commonwealth of Puerto Rico, or of any parts or share thereof...shall be **absolutely null and void,** unless...(2) in the case of any perfected contract, after the effectiveness of this act, no right or claim may be assigned if it arises from a contract which prohibits such assignment or transfer..."

3 L.P.R.A. § 902 (emphasis added).  As previously set forth, the Assignment explicitly violated paragraph XV of the original Construction Contract for lack of proper consent-to-Assignment.  Therefore the transfer to BPPR is further at odds with Article 201 by failing to meet a condition required to escape the general rule of nonassignability involving contracts with the Puerto Rican government. As such, the Assignment is "absolutely null and void" under Article 201 para. 1, where the original construction contract "prohibits such assignment." 3 L.P.R.A. § 902(2).

Notwithstanding the failure to meet that condition, a further requirement of the exception to general nonassignability outlined in Article 201 is that notification in writing and a true copy of the assignment must be provided to

> "(a) The contracting officer or chief of the department or agency;
> (b) **the insurer or insurers under bond or bonds,** if any should be granted in connection with such contract, and
> (c) the Secretary of the Treasury or disbursing officer, if any, designated as such under contract."

3 L.P.R.A. § 902(4)(a-c).  In this case, a copy of the Assignment was never provided to USIC as insurer under bond and in connection to the Construction Contract, and thus BPPR failed to meet the requirements of Article 201, subparagraph (b).  This renders the Assignment null and void under a separate and independent ground.

In addition to the undisputed evidence in this proceeding demonstrating BPPR's noncompliance with Article 201, the exception to the general rule prohibiting assignments and transfers of credits under Article 201 should not be interpreted broadly. 1987 Op. Sec. Jus. No. 10. It is therefore this Court's opinion that BPPR failed to comply with Article 201 and thus the Assignment is rendered null and void.

As determined, the Assignment from Debtor to BPPR is null and void under the original Construction Contract and furthermore under the laws of Puerto Rico. Given the nullity of the assignment, combined with the fact that USIC has not alleged a superior right to the contractual funds other than reimbursement of amounts already paid to Project claimants, this Court finds it unnecessary to determine the perfected status of USIC over the contractual funds, or whether USIC or Debtor have the superior right. Those determinations are not relevant to this proceeding. BPPR therefore may not make any claims directly against PRPHA in this adversary proceeding for moneys due under the Construction Contract.

**Second Cause of Action:**

The second cause of action in the Complaint (the "Second Count") seeks a determination that USIC has wrongfully interfered with the rights and property of Debtor and BPPR and is liable to the Debtor and/or BPPR for any damages flowing from that interference. On February 2, 2005, Debtor sent a letter to USIC requesting that it notify PRPHA that all future payments made by PRPHA due to work certified in the Project be made out to both Debtor and USIC. The Debtor stated that they were experiencing cash flow problems as a result of BPPR's seizure of a previous payment. On February 3, 2005, USIC sent a letter to PRPHA pursuant to paragraph 19 of the GAI, requesting that

prospectively all payments of certifications due to work certified by Debtor in the Project be made jointly in the name of USIC and Debtor. Shortly thereafter, PRPHA started issuing the checks for work certified in the Project jointly in the name of Debtor and USIC. USIC demanded but Debtor declined to execute a Joint Control Account Agreement which would have required, among other things, the deposit of the checks in an account jointly controlled by both USIC and Debtor.

On April 14, 2005, Debtor filed bankruptcy and on April 20, 2005, filed an adversary proceeding against USIC demanding the turnover of property pursuant to 11 U.S.C §362(a) and 11 U.S.C. §542 [Adv. Proc. No. 05-00099.] Also filed on that date was an application for a temporary restraining order ("TRO") and for a preliminary injunction (Dkt. No. 2 of Adv. Proc.). Specifically, Debtor sought the return of two checks issued by the PRPHA jointly in the name of USIC and Debtor in the respective amounts of $44,295.31 and $332,447.07. For procedural reasons the TRO was denied by this Court, and nine (9) days later, on April 29, 2005, Debtor filed a motion requesting a voluntary dismissal (Dkt. No.7). USIC and Debtor entered into a stipulation dated April 22, 2005 which called for USIC to return the two checks. The stipulation (Dkt. No.15 in the legal case) called for Debtor to comply with very strict financial accounting conditions meant to insure that the Project's funds were used exclusively to pay for material and labor incorporated to the Project. This Court finds that no damages were proven to have been incurred by Debtor directly as a result of USIC's retention of the checks issued by PRPHA for approximately one month, i.e. from March 28, 2005 to April 22, 2005.

From the record of this case, this Court determines that USIC's request to the PRPHA to issue the joint checks was well within its rights under the GAI and did not breach any legally protected duty to Debtor. On the contrary, Article 1207 of the Civil Code, 31 L.P.R.A. §3372 provides that:

> "[T]he contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided that they are not in contravention of law, morals, or public order."

Plaintiffs have submitted no evidence supporting its assertion that the GAI was required to have been recorded in a public record as stated in the Complaint, nor explained the relevance of any such recording to this proceeding. Further, this Court finds the holding of Acosta & Rodas, Inc. v. PRAICO, 112 D.P.R.583 (1982), cited authoritatively by BPPR in its cause of action, inapplicable to the facts of this adversary proceeding. In that case, the Court upheld the **validity** of the GAI and did not even address the issue of perfection. The Acosta court ruled against PRAICO because the surety did not comply with the **terms** of the GAI. That ruling made no finding as to the requirement of recording the GAI in a public record. In the case at bar, USIC did not demonstrate any intention to be released from the GAI, nor did USIC attempt to avoid performance under the bond, if so required.

Paragraph 19 of the GAI states:

> "In the event that it becomes necessary or advisable in the judgment of the Surety to control, administer, operate, or manage any matters connected with the performance of any contract covered by such bond or bonds for the purpose of minimizing any possible loss or ultimate loss to the Surety, the undersigned hereby expressly covenant and agree that such action on the part of the Surety shall be entirely within its rights and remedies as Surety."

The contractual provision is clear and unambiguous and was the basis of the letter USIC sent to PRPHA on February 3, 2005. The evidence supports that the execution of the GAI by Debtor was an essential consideration for USIC's writing of the Bond. Article 1044 of the Civil Code of Puerto Rico, 31 L.P.R.A. §2994 states that "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." The contractual provisions of both the GAI and the Bond define and control the legal relationship between USIC and Debtor. It is reasonable to conclude from the February 2, 2005 letter sent by Debtor to USIC, as well as the subsequent meeting that took place between Debtor and the representatives of USIC, that there existed a strong possibility of exposure to losses under the Bond. The Debtor clearly indicated that it lacked the necessary resources to pay the costs of materials and labor to continue the Project and to perform its obligations under the Construction Contract. Plaintiffs provided extensive testimony as to the fact that the letter was "dictated" to Lorenzo by a representative of USIC and that she was "deceived", which was denied by USIC's witness. Without entering into the veracity of that contested testimony, this Court finds that Debtor willingly requested USIC's assistance as a result of BPPR's seizure of Project payments from PRPHA, and produced written acknowledgment to USIC of their precarious financial condition. Even assuming that a representative from USIC dictated the letters to Debtor, Lorenzo as the principal of Debtor signed and delivered the February 2, 2005 letter to USIC. Therefore, Debtor is estopped from pleading against its own acts or omissions.

We now turn to the question of USIC's interference with the rights and property of BPPR. Since this Court has determined that under Article 201 Debtor's Assignment over

the Project funds is null and void, it is not necessary to enter into a discussion of BPPR's claim of a preferential security interest in the Project funds.  Based on the foregoing, USIC does not owe any legally protected duty to BPPR since a contractual relationship between these two parties does not exist.

Therefore, plaintiff's claim that USIC has wrongfully interfered with the rights and property of Debtor and is liable to the Debtor for any damages flowing from that interference is denied.  Plaintiff's claim that USIC has wrongfully interfered with the rights and property of BPPR and is liable to BPPR for any damages flowing from that interference is dismissed in light of this Court's ruling on the first cause of action.

**Fourth Cause of Action:**

The fourth cause of action in the Complaint (the "Fourth Count") is a breach of contract claim by the Debtor against USIC, including a breach of the automatic stay. Debtor alleges that USIC has not acted in good faith, has been negligent, and incurred in fault.  The record of the case contains two documents that are contractual agreements between Debtor and USIC, the GAI and the Bond.  The Modified Pre-Trial Report (*See,* Dkt. No. 132) and Lorenzo's testimony in open court, state that the GAI was signed in Lorenzo's personal capacity only, and not as principal of the Debtor. However, a plain reading of the document clearly shows two (2) signatures by Lorenzo, one as "Principal and Indemnitor" of 422 Corporation/Coast 2 Coast General Contractors, Inc. and another as "Indemnitor".  Nevertheless, Debtor presented no admissible evidence that either of these two contracts were breached by USIC.  Even assuming in the light most beneficial to Debtor that one or both of these contracts were somehow breached, no evidence of

- 14 -

damages caused by USIC resulting from such breach is contained in either of the expert reports. (*See,* Debtor's exhibits No. 23, 24, & 25).

Additionally, Debtor is requesting actual and punitive damages, as well as attorney's fees, under 11 U.S.C. §362(h). In the first adversary proceeding numbered 05-00099, Debtor-Plaintiff alleged a violation of 11 U.S.C. 362(a)(3), as a result of USIC's refusal to turn over two checks issued by PRPHA jointly in both names. The stipulation filed on April 25, 2005, which resolved that controversy between Debtor-Plaintiff and USIC (*See,* Dkt. No. 15 in legal case 05-03276), specifically dismissed with prejudice the allegations contained within that complaint. That stipulation was approved by order of this Court on June 16, 2005 (*See,* Order Dkt. No. 42). A renewed allegation of the same violation of the automatic stay under 11 U.S.C 362 as was raised and adjudicated on its merits by the stipulation between the two parties is inappropriate. This Court is restricted from reconsidering this matter by the doctrine of res judicata. (*See,* R.G. Financial Corp. et. al. v. Pedro Vergara-Nuñez et. al, 446 F.3d 178 (1st Cir. 2006) (citing the three elements of res judicata as "(i) the existence of a prior judgment on the merits that is final and uappealable; (ii) a perfect identity of thing or cause between both actions; and (iii) a perfect identity of the parties and the capacities in which they acted."); *citing,* Boateng v. InterAm. Univ., Inc., 210 F.3rd 56, 61-62 (1st Cir. 2000)).

**Fifth and Seventh Cause of Action:**

The fifth cause of action in the Complaint (the "Fifth Count") is a breach of contract claim by the Debtor against both PRPHA and USIC seeking damages for their combined breach of contract, negligence, and bad faith conduct. Given this Court's dismissal of plaintiffs' breach of contract claim against USIC, we will address solely the

claim against PRPHA's actions regarding the Project. The seventh cause of action in the Complaint (the "Seventh Count") is a claim for balances owed by PRPHA to the Debtor for work completed under the Construction Contract. The record of this case demonstrates that PRPHA has failed to timely and diligently perform its obligations under the construction contract. The evidence presented at trial including the testimony of Engineer Jose Baez Vitali, Construction Manager for the Project; Engineer Noefebdo Ramirez, Project monitor; William Rosado, Resident Inspector; and, Engineer Raul Colon's Technical Reports on Project delays (See, Debtor's Exhibit 24 incorporating the 7/14/2005 and 1/20/2006 reports). This testimonial and documentary evidence clearly demonstrates that PRPHA:

(1) Failed to make payment of at least 3 certifications;

(2) Failed to timely deal with a myriad of delays regarding electrical changes due to an easement granted by Puerto Rico Electric Power Authority resulting in the change of an aerial power line, electricity connection to buildings #7, 8 & 9, re-design of building foundations building type D-2, faulty design of the sewer system and connections. Changes were made to the sanitary design without having obtained the endorsement of the Puerto Rico Aqueduct and Sewer Authority.

(3) Failed to acknowledge substantial completion of various buildings, including the communal center which was 99% complete for an extended period;

(4) Failed to approve change orders that are pending;

(5) Failed to promptly deliver additional buildings for continued remodeling;

(6) Failed to promptly process and respond to the claim for extended overhead;

(7) Failed to pay all additional work ordered and performed;

(8) Failed to disburse retainage after more than 50% of the Project had been completed, citing delays in construction which were in fact its own fault.

Engineer Baez testified that these problems arose as a result of omissions in the original plan of design and that PRPHA was responsible for all design problems. On at least three occasions, Debtor attempted to mitigate the delays by doing the required task without an approved change order, or by shifting the order of the work to be performed. None of the evidence regarding the problems that arose during the construction was refuted by PRPHA. The plans and specifications of the Project generated by PRPHA contained significant errors and omissions, the most relevant of which, in terms of its effect on the "critical path method," was the design of the electrical distribution system. The record in this case supports a finding that the disruption and inefficiency in the construction process generated additional costs and expenses to the Debtor, resulting in diminished financial capacity. Evidence submitted by the Debtor, and not refuted by PRPHA, estimates that delays in the construction process exceeded 730 calendar days. The delay in the construction process caused by PRPHA has prevented substantial completion from being attained and consequently has prevented the disbursement of the retainage. On or about December 2005, Debtor declared PRPHA in default as a result of the numerous delays and lack of payment. PRPHA neither acted upon receipt of the default, nor denied the facts invoked.

Based on the foregoing, this Court finds that PRPHA's inefficient administration of the Project made it virtually impossible for Debtor to effectively perform its side of the contract, and thus PRPHA's failures amount to a material breach of the Construction Contract. (*See* Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451 (1991)) (project owner's disapproving of developer's plan constituted material breach when it prevented developer from performing its obligation under the agreement to begin

- 17 -

construction of hotel). As such, PRPHA's material breach of the Construction Contract justifies Debtor's suspension of performance, In re Jarvis, 2005 WL 758805 (Bkrtcy. D.N.H.) ("When applying the material breach test, Courts look for unperformed material obligations that, if breached, would excuse the other party from performing"); In re Three Star Telecast, Inc., 93 B.R. 310, 311 (1988) ("the failure of either to complete the performance would constitute a material breach excusing the performance of the other"). Furthermore, this Court finds that the Debtor is entitled to foreseeable consequential damages for such breach. Cordero v. Disc Makers, Slip Copy, 2007 WL 954315, D.P.R. (2007) ("generally under the substantive law of Puerto Rico consequential damages are available in breach of contract situations if they were foreseeable at the time the contract was formed").

To support the amount of the damage claims, two expert reports were submitted into evidence by Debtor calculating the monetary amount of damages incurred by Debtor as a result of PRPHA's failures to perform under the Construction Contract. *Reporte Escrito* ("CPA Report") (Debtor's Exh. 25); Technical Report on Project Delays ("Engineer's Report") (Debtor's Exh. 24). These two reports contain information up to and including September 2005. Additionally, direct expert testimony of CPA Jorge A. Rodriguez and Engineer Raul Colon was offered to this Court without objection or rebuttal on the part of PRPHA, specifically as to the calculated damages once liability had been established. Furthermore, PRPHA did not offer rebuttal expert testimony or reports, despite its opportunity to do so. Therefore, the calculations made in the two expert reports will be the guide for this Court's determination as to the appropriate amount of monetary damages to be awarded to Debtor. This determination will be limited

by what this Court views as "foreseeable damages" as a result of the material breach by PRPHA. The CPA's expert report (*See*, Debtor's Exh. No. 25), includes two alternatives to reflect the calculation of compensable expense -- compensable days as approved by the change orders, or according to the analysis prepared by the Engineer Raul Colon. Having reviewed the CPA Report, this court will be using the calculations based on the actual change orders.

To date, Debtor has earned funds and completed work for which they have not collected from PRPHA. While certainly a consequence of the breach, such funds are due to Debtor even if PRPHA's substantial delays and failures would not have amounted to a material breach. In total, the funds earned and work completed under the Construction Contract and subsequent change orders that have not been collected from PRPHA amounts to $519,582.35. (*See*, CPA's Report Debtor's Exh. 25).

As a direct consequence of PRPHA's material breach of the Construction Contract, Debtor alleges that PRPHA's substantial delays caused loss of labor efficiency in the amount of $425,747; extended main office overhead in the amount of $398,142; extended field overhead in the amount of $351,344; and increased costs in materials in the amount of $61,732. (*See*, CPA Report Debtor's Exh. No. 25). This Court finds that the loss of labor efficiency combined with the overhead and increased cost of materials claims are foreseeable results of PRPHA's breach under the Construction Contract. Furthermore, the unchallenged expert reports establish a reasonable degree of certainty to the amount of damage in question. Therefore, this Court determines that PRPHA is liable to Debtor in the amount of $1,236,965.00 on the foregoing damage claims.

In regards to the "loss of profits over investment" claim, this Court has decided to award 64.28% of the alleged $106,000 in loss because of the fact that Debtor has only performed that percentage of the construction Project. (*See*, Complaint (Dkt. No. 1, at 17)). The resulting amount is $68,136, loss of profits over investment, is a foreseeable result of PRPHA's material breach of the Construction Contract.

Lastly, the CPA Report includes the amount of $714,000.00 as the amount owed Debtor due to the delays, beyond the original 810 days, and the financial impact these delays had on Debtor's ability to obtain other contracts. The CPA Report estimates the damage from having Debtor's bond capacity restricted at fifteen percent (15%) of the original Construction Contract price. This Court concludes that the $714,000.00 is too speculative and hypothetical to be considered a foreseeable damage claim resulting from PRPHA's breach. This Court hereby dismisses Debtor's claim for "loss of other contracts." Such a damage claim lacks the amount of reasonable certainty that this Court requires to award consequential damages, even in light of PRPHA's material breach.

As such, this Court awards Debtor a total of one million eight hundred and twenty four thousand six hundred and eighty three dollars and thirty five cents ($1,824,683.35) in damages resulting from PRPHA's breach of the Construction Contract.

**CONCLUSION**

For the reasons set forth in this opinion, we find that Debtor's Assignment of the Project funds to BPPR was invalid, therefore BPPR only has an unsecured claim against Debtor's estate; there was no wrongful interference, nor a breach of contract by USIC; there was a breach of contract by PRPHA resulting in an award totaling $1,824,683.35. Additionally, the Court finds that USIC has paid $94,128.05 in claims made by suppliers

and subcontractors of the Project. Debtor is hereby ordered to reimburse USIC from the proceeds of this judgment, for the total amount paid for said claims received under the Bond.

The Clerk shall enter judgment accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 15th day of June, 2007.

Brian K. Tester
U.S. Bankruptcy Judge